UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA G. GLASS, | CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 1:25-cv-01015 |
| CORDOBA LEGAL GROUP LLC, and JAMES M. DAIGLE, P.C. d/b/a DAIGLE LAW, | DEMAND FOR JURY TRIAL |
| Defendants. | |

## **COMPLAINT**

Now comes LISA G. GLASS ("Plaintiff"), by and through the undersigned, complaining as to the conduct of CORDOBA LEGAL GROUP LLC ("Cordoba") and JAMES M. DAIGLE, P.C. d/b/a DAIGLE LAW ("Daigle") (collectively "Defendants") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.*, the Illinois Credit Services Organizations Act ("ICSOA") under 815 ILCS 605/1 *et seq.*, the Illinois Debt Settlement Consumer Protection Act ("IDSCPA") under 225 ILCS 429/1 *et seq.*, the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") under 815 ILCS 505/1 *et seq.*, and Breach of Fiduciary Duty, against Defendants in connection with their unlawful and fraudulent conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the

1

action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within the Northern District of Illinois and a substantial portion of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

### PARTIES

4. Plaintiff is a consumer over 18 years of age residing in Chicago, Illinois, which lies within the Northern District of Illinois.

5. Cordoba is a law firm, credit repair organization, and debt settlement provider that claims to assist consumers with their credit issues by offering their services in negotiating down the amount of debt owed so that consumers can address these debts and ultimately become debt free. Cordoba is a limited liability company organized under the laws of the state of Florida with its principal place of business located at 102 NE 2nd Street, Unit 252, Boca Raton, Florida 33432.

6. Daigle is a law firm and, upon information and belief, entity with whom Cordoba works in connection with the provision of its debt settlement and credit repair services to consumers in jurisdictions which Cordoba is otherwise not admitted to practice or otherwise prohibited from providing its services. Daigle is a professional corporation organized under the laws of the state of Oregon with its principal place of business located at 8980 Red Prairie Road, Sheridan, Oregon 97378.

7. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

### FACTS SUPPORTING CAUSES OF ACTION

8. In approximately July of 2024, Plaintiff was looking to purchase a home, but due to the amount of outstanding debt impacting her credit, struggled to secure financing.

9. In an effort to improve her creditworthiness, Plaintiff began looking into consolidation loans.

10. Plaintiff filled out information online expressing interest in receiving a consolidation loan that would decrease her monthly payments and ultimately save Plaintiff substantial sums in paying down her debt.

11. However, rather than being contacted about a potential consolidation loan, Plaintiff was contacted by Cordoba's representative selling their services.

12. Cordoba represented to Plaintiff that its services would result in Plaintiff being completely debt free, so long as Plaintiff made a series of payments to Cordoba over approximately a couple of years.

13. Cordoba advised that Plaintiff would enroll certain debts in its program, and then use Plaintiff's monthly payments to enter into negotiations with creditors and debt collectors to achieve a reduced balance, ultimately helping Plaintiff pay down her debts and improve her credit.

14. Plaintiff would ultimately save money, have lower monthly payments, and improve her credit through Cordoba's program.

15. Despite representing that there would be an initial minimal impact on Plaintiff through its services, Cordoba nevertheless assured Plaintiff that once settlements were reached and payments made, her credit would improve.

16. Cordoba made it seem as though it would be picking up payments to Plaintiff's creditors, just at lower balances.

17. Cordoba further suggested that Plaintiff would have an attorney in her state assisting with her account and the settlement efforts being made.

18. Finding Cordoba's representations desirable, on or about July 30, 2024, Plaintiff entered into an agreement with Cordoba for the provision of services.

19. Cordoba's contract represented that Daigle was Plaintiff's "local legal counsel" in connection with the services, and that Daigle would perform or otherwise supervise work being done on Plaintiff's behalf.

20. Upon information and belief, Daigle has failed to provide any services, let alone supervise any services, purportedly being provided to Plaintiff by Cordoba or any other party.

21. Upon further information and belief, the only Illinois-licensed attorney seemingly employed by Daigle, Jeff Neuman, did not provide any services to Plaintiff or otherwise supervise any services being provided to Plaintiff or performed on her behalf.

22. Instead, Cordoba involves Daigle in its program, and suggests Illinois consumers have this "local" counsel, in a deceptive, misleading, and misguided effort to attempt to evade Illinois restrictions imposed upon debt settlement companies.

23. While Defendants' practices fail to provide the intended prophylactic effect, they are nevertheless indicative of the generally deceptive, misleading, and unlawful nature of Defendants' business designed to dupe consumers into believing they have a type and level of representation that not only fails to exist but was concocted as a means to evade consumer protection statutes.

24. Plaintiff then began making her monthly payments to Defendant, which total approximately $300 per month.

25. Plaintiff has persisted in making her payments until the present.

4

26. While Plaintiff was instructed by Cordoba to cease paying her creditors and to instead divert those sums to Defendants, Cordoba similarly suggested that it would be picking up payments to her creditors.

27. However, rather than picking up payments to her creditors, Defendants were instead letting Plaintiff's obligations go into default prior to attempting to resolve Plaintiff's obligations.

28. Defendants' advice and conduct caused Plaintiff's credit score to drop precipitously, far greater than the minimal impact Cordoba represented would occur through its services, as accounts have begun to be charged off by creditors.

29. Furthermore, despite Defendants resolving one of Plaintiff's enrolled obligation, this settlement failed to deliver the represented credit improvement upon it being reached.

30. Had Defendants been truthful and upfront with Plaintiff about the nature of their services and impact they would have on Plaintiff, Plaintiff never would have used Defendants' services.

31. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendants for deficient and misrepresented services, denial of the benefit of her bargain with Defendants, diminished credit score, diminished credit capacity, as well as numerous violations of her state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair and debt settlement organizations.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT
PLAINTIFF AGAINST DEFENDANTS

32. Plaintiff repeats and realleges paragraphs 1 through 31 as though fully set forth herein.

33. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

34. Cordoba is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or

perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

35. Cordoba represented, both expressly and by implication, that successfully completing its program would result in improving Plaintiff's credit given the extent to which its services would result in Plaintiff being debt free, which would reduce the debt load apparent on her credit report, and thus improving her credit.

36. Daigle is further a "credit repair organization" given the representations made regarding its involvement in Cordoba's services which, given the nature of the services and representations made, underscore Daigle's purported provision of services with an explicit and implicit purpose of improving Plaintiff's credit.

    a. **Violations of CROA § 1679b(a)**

37. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits **any person** from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), **any person** is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

38. Defendants violated the above provisions of the CROA through the deceptive and misleading representations made regarding where Plaintiff's monthly payments would be going and how Plaintiff's enrolled debts would be impacted. Defendants' agent represented to Plaintiff, around the time Plaintiff signed the agreement with Cordoba, that Plaintiff's monthly payments

would go towards paying down her creditors, leaving Plaintiff with the impression that Defendants would be picking up her payments. However, Defendants deceptively and misleadingly omitted that Plaintiff's obligations would have to go into default in order for negotiation or payment efforts to commence. Plaintiff relied on Defendants' omissions as had Defendants been clear that obligations would have to go into default, she would not have agreed to use Defendants' services. Defendants further omitted this information to deceptively obscure and downplay the potential negative impacts of its services.

39. Defendants further violated the above provisions of the CROA through their concerted and deceptive conduct and representation as to Daigle's involvement in the services at issue. It was represented to Plaintiff that Daigle was her "local" counsel; however, upon information and belief, Daigle is located in Oregon and is not remotely "local" to Plaintiff and further had no actual involvement in or oversight over the services being provided to Plaintiff. Defendants deceptively suggested Plaintiff had "local" counsel that would better and more directly be able to assist her in connection with the services at issue, despite there being no such actual counsel available.

40. Defendants further violated the above provisions of the CROA through their deceptive and misleading conduct in using Daigle's purported licensure in Illinois as a means to avoid the Illinois consumer protection statutes applicable to its business. Upon information and belief, Daigle, at least with regards to Plaintiff, is largely a façade used by Cordoba so as to attempt to justify its provision of services in Illinois despite statutes which would otherwise prohibit the way Cordoba provides its services.

41. Defendants further violated the above provisions of the CROA through the deceptive and misleading representations made regarding the services' impact on Plaintiff. Defendants said that Plaintiff would ultimately enjoy an improvement to her credit, and that any negative aspects of its

7

services would be minimal. However, Plaintiff's credit score plummeted through Defendants' services, and her credit failed to improve in the manner Defendants represented once settlements were reached.

42. Defendants further violated the above provisions of the CROA through their deceptive bait and switch advertising. Plaintiff was roped into and sold on Defendants' misleading services under the guise that she was exploring debt consolidation loans, and Defendants services were represented as a better alternative to consolidation financing or as otherwise being an option when such financing was unavailable. That Plaintiff was roped into Defendants' services under these pretexts further goes about suggesting that an implicit and explicit purpose of Defendants' services was to ultimately make Plaintiff more creditworthy.

43. Cordoba further violated the above provisions of the CROA through its deceptive and misleading conduct in representing its services one way when inducing Plaintiff to sign, only to cut against or blatantly contradict those representations through the contractual terms to which Plaintiff was subjected. Cordoba seeks to benefit from the beneficial and positive representations it makes to consumers orally when describing the services, only to bury a number of the negative consequences in its dense contractual language with Plaintiff was not adequately nor sufficiently provided an opportunity to review. Cordoba's inclusion of a merger and integration clause only further illustrates the deceptive and misleading nature of its conduct.

    b. **Violations of CROA § 1679b(b)**

44. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

45. Cordoba violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Upon information and belief, Cordoba charged Plaintiff various fees, including settlement fees, prior to the complete performance of the services it had agreed to perform.

    c. **Violation of CROA § 1679c**

46. The CROA provides that a credit repair organization must provide consumers with certain written disclosures in the contract underpinning the provision of credit repair services to consumer. Pursuant to 15 U.S.C. § 1679c(b), "the written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

47. Cordoba violated 15 U.S.C. §§ 1679c(a)-(b) through its failure to provide the written disclosures required under § 1679c. Cordoba never provided such disclosures, nor did it provide a separate document containing such disclosures.

    d. **Violation of CROA §§ 1679d**

48. The CROA, pursuant to 15 U.S.C. § 1679d, outlines the various requirements for contracts entered into between credit repair organizations and consumers.

49. Cordoba violated § 1679d through the noncompliant nature of its contract.

50. The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Plaintiff, LISA G. GLASS, respectfully requests that the Honorable Court enter judgment in her favor as follows:

   a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

   b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

   c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

   d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

   e. Awarding any other relief as the Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE ILLINOIS CREDIT SERVICES ORGANIZATION ACT
#### PLAINTIFF AGAINST DEFENDANTS

51. Plaintiff restates and realleges paragraphs 1 through 50 as though fully set forth herein.

52. Plaintiff is a "Buyer" as defined by 815 ILCS 605/3(a).

53. Cordoba is a "Credit Services Organization" as defined by 815 ILCS 605/3(d).

54. Daigle is further a "Credit Services Organization" as defined by 851 ILCS 605/3(d).

55. The carve out for "a person licensed to practice law in this State acting within the course and scope of the person's practice as an attorney" is inapplicable to Defendants. Cordoba is not a "person licensed to practice law" in Illinois, nor was it acting with its course and scope of its practice as an attorney in connection with its dealings with Plaintiff. Daigle is similarly not a person licensed to practice law in the state of Illinois, nor was it acting within the course and scope of its practice as an attorney as it was not actually providing any services to Plaintiff despite the representations to the contrary.

   a. **Violation of ICSOA – 815 ILCS 605/5**

56. The ICSOA, pursuant to 815 ILCS 605/5(1), prohibits a credit services organization from charging or receiving "any money or other valuable consideration prior to full and complete

10

performance of the services the credit services organization has agreed to perform for or on behalf of the buyer . . . ."

57. Cordoba violated 815 ICLS 605/5(1) in much the same way it violated 15 U.S.C. § 1679b(b) outlined above.

58. The ICSOA, pursuant to 815 ILCS 605/5(4), prohibits a credit services organization from "[m]ak[ing[ or us[ing] any untrue or misleading representations in the offer or sale of the services of a credit services organization or engage, directly and indirectly, in any act, practice, or course of business intended to defraud or deceive a buyer in connection with the offer or sale of such services; including but not limited to: . . . the qualifications, training or experience of its personnel; or the amount of credit improvement the consumer can expect to receive as a result of the services."

59. Defendants violated 815 ILCS 605/5(4) through the same conduct that violates 15 U.S.C. § 1679b(a)(3)-(4) outlined above.

      **b. Violations of ICSOA – 815 ILCS 605/6**

60. The ICSOA, pursuant to 815 ILCS 605/6, outlines the requirements for certain disclosures to be provided to consumers, including various pieces of information regarding the right to proceed against a surety bond.

61. Defendants violated 815 ILCS 605/6 through its failures to comply with the Illinois requirements for credit repair disclosures.

      **c. Violations of ICSOA – 815 ILCS 605/7**

62. The ICSOA, pursuant to 815 ILCS 605/7, outlines various requirements for contracts entered into between credit services organizations and consumers.

63. Defendants violated the above portions of the ICSOA through its failure to follow the contractual requirements for consumers receiving credit repair services in Illinois.

WHEREFORE, Plaintiff, LISA G. GLASS, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to 815 ILCS 605/11;

c. Awarding Plaintiff punitive damages pursuant to 815 ILCS 605/11;

d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to 815 ILCS 605/11; and,

e. Awarding any other relief the Honorable Court deems just and appropriate.

### COUNT III – VIOLATIONS OF THE ILLINOIS DEBT SETTLEMENT CONSUMER PROTECTION ACT
#### PLAINTIFF AGAINST DEFENDANTS

64. Plaintiff restates and realleges paragraphs 1 through 63 as though fully set forth herein.

65. Plaintiff is a "consumer" as defined by 225 ILCS 429/10.

66. Cordoba is a "debt settlement provider" as defined by 225 ILCS 429/10.

67. Daigle is a "debt settlement provider" as defined by 225 ILCS 429/10.

68. The exemptions from the IDSCPA for attorneys licensed or authorized to practice law in Illinois acting within the scope of their practice as attorneys is not applicable to Cordoba as Cordoba is not an "attorney[] licensed" to practice in Illinois, nor was it "engaged in the practice of law" in connection with the services provided to Plaintiff. Daigle is further not a "attorney[[ licensed" to practice in Illinois, nor was it engaged in the practice of law in connection with the services provided to Plaintiff.

    a. **Violations of 225 ILCS 429/120**

69. The IDSCPA, pursuant to 225 ILCS 429/10, outlines the nature of the required information debt settlement providers must provide in their contracts with consumers.

70. Defendants violated 225 ILCS 429/10 through their failure to provide the extent of requisite information required to be provided in its contracts with consumers.

### b. Violations of 225 ILCS 429/125

71. The IDSCPA, pursuant to 225 ILCS 429/125, outlines the nature of fees to be charged by debt settlement providers. Pursuant to 429/125(c), a debt settlement provider "may charge a settlement fee, which shall not exceed an amount greater than 15% of the savings."

72. Defendants violated the above provision of the IDSCPA through their charging of a 25% settlement fee tied to the balance of Plaintiff's enrolled debts. Defendants were limited to charging Plaintiff 15% of the *savings* they deliver, but instead charged Plaintiff 25% of the balance.

73. Pursuant to 429/125(d), "a debt settlement provider shall not collect any settlement fee from a consumer until a creditor enters into a legally enforceable agreement to accept funds in a specific dollar amount as full and complete satisfaction of the creditor's claim with regard to that debt and those funds are provided by the debt settlement provider on behalf of the consumer or are provided directly by the consumer to the creditor pursuant to a settlement negotiated by the debt settlement provider."

74. Defendants violated the above provision by charging settlement fees prior to the complete resolution of enrolled obligations. Cordoba charged any settlement fees after entering into settlements but prior to the complete satisfaction of the enrolled obligations, in direct violation of Illinois statutes governing the timing of charges by debt settlement companies.

75. These provisions, *inter alia,* are ones that Cordoba seeks to avoid through its utilization of a Daigle attorney's Illinois licensure, who does not actually provide any services or meaningful oversight over services, in order to avoid these strict billing requirements. However, even

assuming Daigle actually provided any services or oversight of services, Defendants – and the services – would still not be exempt from the IDSCPA.

### c. Violations of 225 ILCS 429/140

76. The IDSCPA, pursuant to 225 ILCS 429/140, provides that "[a] debt settlement provider shall act in good faith in all matters under this Act."

77. Defendants violated the above provision of the IDSCPA through their failure to act in good faith at all times in their relations and dealings with Plaintiff.

### d. Violations of 225 ILCS 429/145

78. The IDSCPA, pursuant to 225 ILCS 429/145, outlines a number of prohibited practices on the part of debt settlement providers.

79. 225 ILCS 429/145(1) provides that a debt settlement provider shall not "[c]harge or collect from a consumer any fee not permitted by, in an amount in excess of the maximum amount permitted by, or at a time earlier than permitted by Section 125 of [the IDSCPA]."

80. Defendants violated the above provision of the IDSCPA through the nature of its billing practices.

81. 225 ILCS 429/145(2) provides that a debt settlement provider shall not "[a]dvise or represent, expressly or by implication, that consumers should stop making payments to their creditors, lenders, loan servicers, or loan guarantors or government entities."

82. Defendants violated the above provision of the IDSCPA through their explicit and implicit instructions that Plaintiff should cease making payments in connection with enrolled obligations and instead divert those payments to Defendants.

83. 225 ILCS 429/145(12) provides that a debt settlement provider shall not enter into a contract with a consumer without providing the requisite disclosures.

84. Cordoba violated the above provisions of the IDSCPA by contracting with Plaintiff despite failing to provide the requisite disclosures.

85. 225 ILCS 429/145(13) provides that a debt settlement provider shall not "misrepresent any material fact, make a material omission, or make a false promise directed to one or more consumers in connection with the solicitation, offering, contracting, or provision of debt settlement services." Similarly, 225 ILCS 429/145(17) provides that a debt settlement provider shall not "employ an unfair, unconscionable, or deceptive act or practice, including the knowing omission of any material information."

86. Defendants violated the above provisions of the IDSCPA in much the same way it violated the numerous provisions of the CROA outlined above.

WHEREFORE, Plaintiff, LISA G. GLASS, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to 225 ILCS 429/155(b) and 815 ILCS 505/10a;

c. Awarding Plaintiff punitive damages pursuant to 225 ILCS 429/155(b) and 815 ILCS 505/10a;

d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to 225 ILCS 429/155(b) and 815 ILCS 505/10a ; and,

e. Awarding any other relief the Honorable Court deems just and appropriate.

### COUNT IV – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
PLAINTIFF AGAINST DEFENDANTS

87. Plaintiff restates and realleges paragraphs 1 through 86 as though fully set forth herein.

88. Plaintiff is "any person" as defined by 815 ILCS 505/10a(a).

89. Defendants' services and conduct constitute "trade" and "commerce" as defined by 815 ILCS 505/1(f) of the ICFA.

90. The ICFA states:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

91. Defendants violated the ICFA through the unfair and deceptive nature of their overarching scheme and deceptive and misleading provision of services, discussed at length above.

92. Furthermore, violations of the IDSCPA constitute violations of the ICFA. *See* 225 ILCS 429/155(a), further demonstrating Defendants' violations of the ICFA

WHEREFORE, Plaintiff, LISA G. GLASS, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual and punitive damages, in an amount to be determined at trial, for the underlying violations;

c. Awarding Plaintiff costs and reasonable attorney fees;

d. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT V – BREACH OF FIDUCIARY DUTY
#### PLAINTIFF AGAINST DEFENDANTS

93. Plaintiff restates and realleges paragraphs 1 through 92 as though fully set forth herein.

94. Defendants owed Plaintiff a fiduciary duty arising out of the nature of their relationship. Defendants were purporting to provide legal and financial services to Plaintiff, inherently rendering them her fiduciary.

95. Defendants breached the fiduciary duties owed Plaintiff given the nature of the "services" provided to Plaintiff. Defendants had a duty as a fiduciary to provide reasonable and beneficial services and advice to Plaintiff, yet repeatedly breached that duty through deceptive representations regarding the services, the misappropriation of Plaintiff's funds, and further provision of blatantly unlawful services structured for the specific purpose of charging consumers for debt settlement services at an amount greater than what is allowed under Illinois law. Defendants completely disregarded the fiduciary duties owed Plaintiff, and their breach of such duties caused Plaintiff significant financial harm as well as emotional distress.

WHEREFORE, Plaintiff, LISA G. GLASS, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages;

c. Award Plaintiff punitive damages;

d. Award Plaintiff reasonable attorney's fees and costs;

e. Enjoining Cordoba from continuing its unlawful conduct; and,

f. Awarding any other relief as the Honorable Court deems just and appropriate.

Dated: January 29, 2025                                    Respectfully submitted,

s/ Nathan C. Volheim                                       s/Eric D. Coleman
Nathan C. Volheim, Esq. #6302103                           Eric D. Coleman, Esq. #6326734
Counsel for Plaintiff                                      Counsel for Plaintiff

17

| | |
|---|---|
| Admitted in the Northern District of Illinois<br>Sulaiman Law Group, Ltd.<br>2500 South Highland Ave., Suite 200<br>Lombard, Illinois 60148<br>(630) 568-3056 (phone)<br>(630) 575-8188 (fax)<br>nvolheim@sulaimanlaw.com | Admitted in the Northern District of Illinois<br>Sulaiman Law Group, Ltd.<br>2500 South Highland Ave., Suite 200<br>Lombard, Illinois 60148<br>(331) 307-7648 (phone)<br>(630) 575-8188 (fax)<br>ecoleman@sulaimanlaw.com |